UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Guy Greene, | Case No. 11-cv-979 (JRT/DJF) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION AND ORDER |
| Dennis Benson, et al., | |
| Defendants. | |

## INTRODUCTION

Over a decade ago, Plaintiff Guy Greene filed this lawsuit challenging the legality of conditions at the Minnesota Sex Offender Program ("MSOP"), where he is confined subject to involuntary civil commitment. *See* Amended Complaint (ECF No. 20). The Chief Judge stayed this action during the pendency of a related class action lawsuit, *Karsjens v. Minnesota Department of Human Services*, No. 11-CV-3659 (DWF/TNL) ("*Karsjens*") (ECF No. 82). The Chief Judge lifted the stay on October 3, 2022, after final judgment was entered in *Karsjens*. (ECF No. 118.) This matter is now before the Court on Defendants'[1] Motion to Dismiss the Amended Complaint ("Motion to Dismiss") (ECF No. 120). The Court also addresses a variety of motions Mr. Greene filed after the court lifted the stay, including his: Motion to Consolidate Cases ("Motion to Consolidate") (ECF No. 126); Motion for Sanctions (ECF No. 141); and Motion for the Appointment of Counsel ("Motion to Appoint") (ECF No. 144).

---

[1] "Defendants" refers to all named defendants other than Gary Fahnhorst, whom the Court previously dismissed from this action (ECF No. 139).

1

For the reasons given below, the Court finds all of Mr. Greene's claims fail, and accordingly recommends granting Defendants' Motion to Dismiss and denying Mr. Greene's Motion to Consolidate as moot. The Court further denies Mr. Greene's Motion for Sanctions as frivolous and denies his Motion to Appoint.

## BACKGROUND

### I. The *Karsjens* Lawsuit

The operative complaint in *Karsjens* raised thirteen claims for relief under the United States and Minnesota constitutions and Minnesota state law:

1. The Minnesota Commitment and Treatment Act, Minn. Stat. § 253D ("MCTA") is unconstitutional on its face;
2. The MCTA is unconstitutional as applied;
3. Failure to provide treatment in violation of the Fourteenth Amendment;
4. Failure to provide treatment in violation of the MCTA;
5. Denial of the right to be free from punishment in violation of the Fourteenth Amendment;
6. Denial of less restrictive alternative confinement in violation of the Fourteenth Amendment;
7. Denial of right to be free from inhumane treatment in violation of the Fourteenth Amendment;
8. Denial of the right to religion and religious freedom in violation of the First and Fourteenth Amendments;
9. Unreasonable restriction of free speech and free association in violation of the First Amendment;
10. Unreasonable searches and seizures in violation of the Fourth Amendment;
11. Violation of court ordered treatment;
12. Breach of contract; and
13. Tortious interference with contract and intentional violation of Minn. Stat. §253B.03, subd. 7.

*See Karsjens*, Third Amended Complaint ("TAC") (ECF No. 635).

The district court dismissed Counts 4, 11, 12 and 13 of the *Karsjens* complaint with prejudice on August 10, 2015. (*Id.* at ECF No. 1005.) On appeal, the Eighth Circuit entered judgment in favor of the defendants on Counts 1 and 2. *Karsjens v. Piper*, 845 F.4d 394, 410–11 (8th Cir. 2017). On remand, in August 2018, the district court dismissed Counts 3 and 5–10 with

2

prejudice. *Karsjens* (ECF No. 1108). On a second appeal before the Eighth Circuit, the plaintiffs challenged the district court's dismissal of Counts 3 and 5–7. *Karsjens v. Lourey* 988 F.3d 1047, 1050 (8th Cir. 2021). The Eighth Circuit affirmed the dismissal of Count 3 but remanded with instructions to apply a different legal standard with respect to Counts 5, 6 and 7. *Id.* at 1053–54. The district court again dismissed Counts 5, 6 and 7 with prejudice in February 2022. *Karsjens* (ECF No. 1197). The plaintiffs have appealed that decision and their appeal remains pending, *Karsjens* (ECF No. 1200), but at present there is a final judgment on the merits dismissing with prejudice all thirteen counts asserted in *Karsjens*.

## II. The Amended Complaint

The gravamen of Mr. Greene's 91-page Amended Complaint is that his detention at MSOP, through its policies and practices, violated a myriad of his individual rights. Mr. Greene raises seventeen claims for relief in his Amended Complaint, largely pursuant to 28 U.S.C. § 1983 under the United States Constitution. The Amended Complaint also asserts state law claims under parallel provisions of the Minnesota Constitution, as well as the MCTA and common law:

1. Failure to provide treatment, in violation of the Fifth and Fourteenth Amendments and the MCTA;
2. Unreasonable restrictions on free speech, in violation of the First Amendment;
3. Unreasonable searches and seizures in violation of the Fourth Amendment;
4. Invasion of privacy in violation of the Fourth Amendment;
5. Denial of access to legal materials and counsel in violation of the Sixth Amendment;
6. Denial of Indian health care and affordable Indian housing in violation of the Fifth and Fourteenth Amendments;
7. Denial of the right to religion and religious freedom in violation of the First, Fifth and Fourteenth Amendments;
8. Denial of less restrictive alternative placement in violation of the Fifth and Fourteenth Amendments;
9. Denial of the right to be free from cruel and unusual punishment under the First, Fifth and Fourteenth Amendments;
10. Denial of the right to be free from double jeopardy in violation of the First, Fifth and Fourteenth Amendments;
11. Denial of due process in violation of the Fourteenth Amendment;
12. Conspiracy to deny due process in violation of the Fourteenth Amendment;

13. Intentional infliction of emotional distress;
14. Negligent infliction of emotional distress;
15. Violation of the Contracts Clauses of the U.S. and Minnesota constitutions;
16. Violation of separations of powers under the First, Fifth and Fourteenth Amendments; and
17. Discriminatory practices in violation of the Fourteenth Amendment.

(*See* ECF No. 20 ¶¶ 238–63.)

The bulk of Mr. Greene's allegations are pled in a broad shotgun fashion jointly against all named Defendants, without specificity regarding any individual Defendant's conduct. For example:

> On or about June 2009, Mr. Greene requested an extended visit with his parents. Defendants, specifically Mr. Dennis Benson, Cal R. Ludeman, Greg Carlson, Kevin Moser, David Prescott, Janine Hebert, Tom Lundquist, Elizabeth Barbo, Debra James, Julie Rose, Vickie Aldridge and Gary Fahnhorst, refused, telling Mr. Greene simply, "Not at this time." Several times since then Mr. Greene has requested the opportunity for an extended visit with his family and each time defendants, specifically including Mr. Dennis Benson, Cal R. Ludeman, Greg Carlson, Kevin Moser, David Prescott, Janine Hebert, Tom Lundquist, Elizabeth Barbo, Debra James, Julie Rose, Vickie Aldridge and Gary Fahnhorst, have refused that request without good reason. Defendants, specifically including Mr. Dennis Benson, Cal R. Ludeman, Greg Carlson, Kevin Moser, David Prescott, Janine Hebert, Tom Lundquist, Elizabeth Barbo, Debra James, Julie Rose, Vickie Aldridge and Gary Fahnhorst, have acknowledged that extended family visits are essential to Mr. Greene's treatment as family support and open communication with family is critical in establishing that Mr. Greene has the support group for him to be released.

(ECF No. 20 ¶ 120.)

To the extent Mr. Greene pleads specific allegations against individuals, most are asserted against individuals whom he did not name in the Amended Complaint. (*See, e.g.*, *id.* ¶ 53 (alleging Jeanine Dreher and Forrest Hall sprayed Mr. Greene in the face with mace without provocation); *id.* ¶ 55 (alleging MSOP supervisor staff Julianna Beavins called a panic alarm on Mr. Greene); *id.* ¶ 56 (alleging Teresa Winters-Knies and Thomas Cherro imposed improper lockdowns); *id.* ¶¶ 63-64 (alleging Brian Ninneman wrongfully denied him yard time); *id.* ¶ 72 (alleging Mr. Ninneman improperly removed furniture from the day room); *id.* ¶ 73 (alleging former Governor

4

Pawlenty ordered televisions removed from the facility); *id.* ¶ 81 (alleging Mr. Ninneman improperly took away Mr. Greene's right to participate in ceremonial religious services); *id.* ¶¶ 104-105 (alleging Mr. Ninneman and Sara Kulas interfered with his receipt of a package containing Eagle feathers); *id.* at ¶ 124 (alleging Ms. Winters-Knies improperly chilled his religious speech at a Native American ceremony); *id.* ¶¶ 127–33 (alleging Mr. Cherro engaged in criminal misconduct against Mr. Greene in October 2010 and on March 9, 2011).)

A few of the allegations are more specific as to Defendants Benson and Carlson. (*See, e.g.,* ECF No. 20 ¶ 51 (alleging Mr. Benson and Mr. Carlson accused him of being confrontational when he requested MSOP polices and told him to look the policies up on a computer); *id.* ¶ 59 (alleging Mr. Benson and Mr. Carlson told him to discuss his complaints concerning lockdowns with Defendant Moser and Mr. Ninneman); *id.* ¶ 66 (alleging Mr. Carlson took away his job and denied him another available job for several months); *id.* ¶ 135 (alleging on belief that Mr. Benson ordered the library in St. Peter to be closed); *id* ¶ 191 (alleging Mr. Benson contends paper and pencils are enough for MSOP resident hobbies); *id.* ¶¶ 206-07 (alleging Mr. Benson has denied MSOP residents access to educational programming). The vast majority of the allegations, however, implausibly assert that all Defendants jointly were involved.

## ANALYSIS

**I.    Mr. Greene's Motion for the Appointment of Counsel**

Mr. Greene requests that the Court appoint counsel to represent him in these proceedings (ECF No. 144). "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). Rather, the appointment of counsel is a matter of the Court's discretion. *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997); *Mosby v. Mabry*, 697 F.2d 213, 214 (8th Cir. 1982). Factors to consider in deciding whether

5

to appoint counsel include: "(1) the factual complexity of the issues; (2) the ability of the indigent person to investigate the facts; (3) the existence of conflicting testimony; (4) the ability [of the] indigent person to present the claims; and (5) the complexity of the legal arguments." *Crozier v. Westside Cmty. Sch. Dist.*, 973 F.3d 882, 889 (8th Cir. 2020) (citing cases).

The Court recognizes Mr. Greene's strong desire for appointment of counsel. Although the Amended Complaint is lengthy, the Court cannot conclude that this matter is factually or legally complex. Mr. Greene's entitlement to relief on his claims turns on the content of policies at the MSOP and alleged facts related to his own experiences at the institution where he resides. This is well within his capabilities to investigate—even as a pro se litigant. Moreover, Mr. Greene has already demonstrated at least a baseline ability to present his claims and litigate in federal court. Furthermore, as discussed below, the Court recommends Mr. Greene's case be dismissed, but to the extent any conflicting testimony may emerge later, this factor does not outweigh the others. Finally, the Court notes that this is Mr. Greene's fourth motion to appoint counsel in this case, and that each time his motion has been denied by the judge reviewing the motion (*see* ECF Nos. 5, 74, 116, 144). The Court is satisfied that the earlier denials were appropriate. Accordingly, the Court again denies Mr. Greene's motion for appointment of counsel.

## II.   Defendants' Motion to Dismiss

Defendants argue nearly all of Mr. Greene's seventeen causes of action are barred by claim and issue preclusion in light of *Karsjens*. (ECF No. 122 at 7-16.) Defendants argue in the alternative that each cause of action fails to state a claim for relief. (*Id.* at 16-28.) Defendants further urge the Court to decline to exercise supplemental jurisdiction over Mr. Greene's state law claims and argue these claims should be dismissed in any event for failure to state a claim or lack of jurisdiction. (*Id.* at 29-31.) Defendants next assert Plaintiff's individual-capacity claims should

be dismissed because he either fails to allege any individual defendant's specific involvement in the underlying factual allegations or alleges involvement that does not establish an actionable deprivation of his rights. Finally, Defendants argue Mr. Greene's individual-capacity damages claims should be dismissed under the doctrine of qualified immunity, and that his official-capacity damages claims are barred by the Eleventh Amendment.

### A.     Legal Standard

#### 1.     Standard of Review Under Rule 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

#### 2.     Pleading Requirements

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that a complaint include "a short plain statement of the claim showing the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court has held, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556. Although pro se complaints must be construed liberally, such complaints still must allege sufficient facts to state a claim as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

Rule 11(b) places additional requirements on pleadings filed both by "an attorney or unrepresented party." Fed. R. Civ. P. 11(b). Any party who files "a pleading, written motion, or other paper … [with the Court] certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* at 11(b)(3).

Taken together, "[i]t is the plaintiffs' burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." *Gurman v. Metro Hous. Dev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011). Courts in the District of Minnesota have "repeatedly criticized the filing of 'kitchen-sink' or 'shotgun' complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant." *Id.* at 1153 (collecting cases). Such complaints shift "onto the

defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support." *Id.* Most problematic for plaintiffs filing 'kitchen-sink' complaints is that it becomes incredibly difficult for the court to discern whether they state viable claims for relief, because their allegations become "wreathed in a halo of frivolous and near frivolous legal claims. The bad obscures the good." *Id.* at 1154; *see also, e.g.*, *White v. Dayton*, 11-cv-03702-NEB-DJF, 2023 WL 21918, at *3 (D. Minn. Jan. 3, 2023) (noting that when plaintiffs "impute nearly every action in the Complaint to every Defendant, it is impossible for the Court to determine from the pleadings which of the allegations it should construe literally, and which it should assume result from sloppy draftsmanship"), *report and recommendation adopted*, 2023 WL 1797830 (D. Minn. Feb. 7, 2023).

### B.   Claim Preclusion

Defendants argue nearly all of Mr. Greene's claims are precluded by claim preclusion, issue preclusion, or both, because they were litigated or arise under the same nucleus of facts such that they could have been litigated in *Karsjens*. Mr. Greene responds that his claims are not precluded, because in his view, *Karsjens* applied an incorrect legal standard (ECF No. 133 at 5–10).

"Under federal common law, the doctrine of *res judicata*, or claim preclusion, applies when '(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.'"[2] *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)).

---

[2] The Eighth Circuit sometimes asserts as a fifth factor, that "the party against whom res judicata is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect." *United States v. Bala*, 948 F.3d 948, 950 (8th Cir. 2020)

"'[P]rivity' is 'merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within res judicata.'" *Elbert*, 903 F.3d at 782. At bottom, the question is whether the relationship of the privity parties is so close to the named parties that the complaint at issue is merely a repetition of the first cause of action. *Id.* (quoting *Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3d Cir. 1972)).

"[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based on the same factual predicate." *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989). This determination is to be made "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Poe v. John Deere Co.*, 695 F.2d 1103, 1106 (8th Cir. 1982) (quoting Restatement (Second) of Judgments § 24(1) (1982)). "Under the doctrine of res judicata, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been* raised in that action.'" *Elbert*, 153 F.3d at 673 (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added)).

Here, there can be no reasonable dispute that this case meets the first three requirements for claim preclusion. *See, e.g.*, *Jamison v. Ludeman et al.*, 11-cv-2136-PAM-DTS, 2023 WL 2088302, at *2 (D. Minn. Feb. 17, 2023) (D. Minn. Feb. 16, 2023) (applying claim preclusion to a similar MSOP lawsuit); *Allen v. Jesson*, 11-cv-1611-ADM-LIB (ECF No. 58) (D. Minn. March

---

(quoting *Rutherford v. Kessel*, 560 F.3d 874, 877 (8th Cir. 2009)). As a member of the plaintiff class in *Karsjens*, Mr. Greene has been litigating that matter for over a decade. His opportunity to litigate in that case has been more than sufficient to satisfy the "full and fair opportunity" factor, to the extent it applies.

27, 2023) (same) (hereinafter, "*Allen v. Jesson*"), *report and recommendation adopted* (ECF No. 67) (D. Minn. April 27, 2023).  First, the court dismissed *Karsjens* by a final judgment on the merits dismissing all claims.  Though an appeal in that case is pending, "It is well established in the federal courts that 'the pendency of an appeal does not diminish the res judicata effect of a judgment rendered by a federal court.'" *Magee v. Hamline University*, 1 F. Supp. 3d 967, 975 n.5 (D. Minn. 2014) (quoting *Dickinson v. Ewing (In re Ewing)*, 852 F.2d 1057, 1060 (8th Cir. 1988)), *aff'd*, 775 F.3d 1057 (8th Cir. 2015). Second, there is no question that the court in *Karsjens* had proper jurisdiction over the case, which raised a myriad of federal law claims.  Third, Mr. Greene was a class member in *Karsjens*, and Defendants Benson, Herbert and Moser were named defendants in *Karsjens*.  See *Karsjens* TAC (ECF No. 635).  The remaining Defendants—Cal Ludeman, Greg Carlson, David Prescott, Tom Lundquist, Elizabeth Barbo, Debra James, Julie Rose and Vickie Aldridge (together, "Privity Defendants")—are all in privity with the defendants from *Karsjens*.  See *Jamison*, 2023 WL 2088302, at *2 (applying claim preclusion to a similar MSOP lawsuit in which Cal Ludeman, Tom Lundquist, and Elizabeth Barbo were named defendants in the second suit); *Allen v. Jesson*, (ECF No. 58) (applying claim preclusion to a similar MSOP lawsuit naming Cal Ludeman, Greg Carlson, David Prescott and Tom Lundquist as defendants). Like Defendants Benson, Herbert and Moser, the Privity Defendants are all alleged Minnesota Department of Human Services officials sued in their individual and official capacities, who Mr. Greene alleges knew or should have known about illegalities occurring at MSOP.  Because they are all sued in connection with their alleged roles and responsibilities as representatives of MSOP, the element of privity is satisfied.

    Only the fourth claim preclusion element remains.  If Mr. Greene's claims "arise out of the same nucleus of operative fact or are based on the same factual predicate" as asserted in *Karsjens*,

*Murphy*, 877 F.2d at 684–85, and *Karsjens* raised or could have raised Mr. Greene's claims, *Elbert*, 153 F.3d 673 (citation omitted), the claims are barred by claim preclusion.

With respect Claims 1–4, 7–9, 11 and 15 of the Amended Complaint, the answer is clearly yes, as the *Karsjens* court considered nearly identical claims and dismissed them:[3]

- *Compare* Claim 1: Failure to Provide Treatment (ECF No. 20 ¶ 238), *with Karsjens* TAC, (ECF No. 635 ¶¶ 254–61).

- *Compare* Claim 2: Unreasonable Restriction on Free Speech (ECF No. 20 ¶ 239), *with Karsjens* TAC (ECF No. 635 ¶¶ 307–15).

- *Compare* Claims 3 and 4: Unreasonable Searches and Seizures and Invasion of Privacy (ECF No. 20 ¶¶ 240, 41), *with Karsjens* TAC (ECF No. 635 ¶¶ 316–25).

- *Compare* Claim 7: Denial of the Right to Religion and Religious Freedom (ECF No. 20 ¶ 244), *with Karsjens* TAC (ECF No. 635 ¶ 298–306).

- *Compare* Claim 8: Denial of Less Restrictive Alternatives (ECF No. 20 ¶ 245), *with Karsjens* TAC (ECF No. 635 ¶¶ 284–91).

- *Compare* Claim 9: Cruel and Unusual Punishment (ECF No. 20 ¶ 246), *with Karsjens* TAC (ECF No. 635 ¶¶ 269–83).

- *Compare* Claim 11: Denial of Due Process in Violation of the 14th Amendment (ECF No. 20 ¶¶ 248–50, 251–53), *with Karsjens* TAC (ECF No. 635 ¶¶ 226–33) (Count I), alleging the MCTA is unconstitutional on its face; (*id.* ¶¶ 234-253) (Count II), alleging the MCTA is unconstitutional as applied.

- *Compare* Claim 15: Obligations of Contracts (ECF No. 20 ¶ 260), *with Karsjens* TAC (ECF No. 635 ¶¶ 333–342).

*See Jamison*, 2023 WL 2088302, at *2 (dismissing virtually identical claims on the same basis).

---

[3] To the extent Mr. Greene has provided an additional state law basis for some of these claims, "it is clear that [he] has 'merely presented different legal claims which spring from the same set of facts' as *Karsjens*[,]" rendering the state law basis for these claims precluded. *Jamison*, 2023 WL 2088302, at *2.

Mr. Greene's remaining claims assert legal theories that the *Karsjens* plaintiffs did not raise explicitly, including: Claim 5 (denial of access to legal materials and counsel); Claim 6 (denial of Indian health care and housing); Claim 10 (double jeopardy); Claim 12 (conspiracy to deny due process); Claims 13-14 (intentional and negligent infliction of emotional distress); Claim 16 (violation of separation of powers); and Claim 17 (discriminatory practices). Although the legal theories underpinning these claims differ to some extent from those asserted in *Karsjens*, they are largely barred by claim preclusion, since "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Id.* at *2 (dismissing similar denial of access to the courts and emotional distress claims on such a basis) (quoting *Plough v. W. Des Moines Comm. Sch. Dist.*, 70 F.3d 512, 514 (8th Cir. 1995) (emphasis added)). The Court notes that the Amended Complaint does not identify any subset of facts as support for any particular claims. Instead, it incorporates *all* of Mr. Greene's broad-based allegations into every one of his claims, and throughout nearly all of the Amended Complaint, Mr. Greene has "merely presented different legal claims which spring from the same set of facts" as those asserted in *Karsjens*. *Id.* (quoting *Biermann v. United States*, 67 F. Supp. 2d 1057, 1060 (E.D. Mo. 1999)). Thus, to the extent Mr. Greene's remaining claims arise from the same nucleus of facts as those asserted in *Karsjens*, they are barred under the doctrine of claim preclusion.[4]

Mr. Greene's only argument to the contrary—that counsel in *Karsjens* did not argue for the application of the correct legal standard—does not affect the Court's conclusion. Claim

---

[4] For example, in Claim 5 Mr. Greene alleges Defendants violated his Sixth Amendment rights by depriving him of access to a law library (ECF No. 20 ¶ 242). Deprivation of access to a law library was also alleged in *Karsjens* (ECF No. 653 ¶ 138(d)). Because this claim arises from the same general nucleus of facts as those asserted in *Karsjens* it is precluded.

13

preclusion arises from the operative facts and claims asserted in the prior matter, not the parties' arguments made therein.[5] *See Jamison*, 2023 WL 2088302, at *2 (rejecting the same argument).

### C.       Failure to State a Claim

To the extent Mr. Greene asserts claims that diverge from those asserted in *Karsjens*, he fails to state a claim for relief sufficient to avoid dismissal under Rule 12(b)(6).  Claim 6 asserts denial of Indian healthcare and affordable Indian housing, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution (ECF No. 20 ¶ 243).  His underlying argument appears to be that by detaining him in the MSOP, the State has deprived him of a higher level of health care and housing owed to Native Americans under various policies, contracts and statutes, and that by treating him differently than other, similarly situated Native Americans, the State has violated his constitutional right to Equal Protection.  (*Id.* ¶¶ 225-27; *see also id.* ¶ 248 (Claim 17), alleging "unequal treatment of persons similarly situated.")  But Mr. Greene's status as a civilly-committed sex offender is what resulted in the alleged deprivations at issue; not his protected status as a Native American.  To the contrary, Mr. Greene is claiming a right to specialized treatment because of his class status as a Native American.  The Equal Protection Clause guarantees *equal* treatment regardless of class status; it does not guarantee *better* treatment for protected classes of people.  The Amended Complaint raises no plausible allegation that Native American individuals at MSOP are discriminated against with respect to housing and healthcare.  The Court recommends dismissing this claim for these reasons.

---

[5] Mr. Greene also might be asserting that because *Karsjens* was dismissed based on the application of, in his view, an incorrect legal standard, the *Karsjens* court was not of competent jurisdiction and did not reach a final judgment on the merits (ECF No. 128 at 2-3). To the extent he asserts this argument, it also fails.  That the court dismissed *Karsjens* on a legal theory with which Mr. Greene disagrees has no impact on whether the court had jurisdiction or whether its decision was final.

The Amended Complaint also asserts a handful of novel factual allegations, including that: (1) on March 2, 2010, an MSOP security officer called a panic alarm to stop a Native American ceremony in which Mr. Greene was taking part, Security Officer Cherro attacked him and called him slurs in the process, and Defendants Carlson and Moser failed to conduct a "proper investigation" and failed to "file criminal charges and train Mr. Cherro"; (2) on October 10, 2010, Officer Cherro attempted to provoke Mr. Greene during a Native American ceremony; and (3) on either March 2 or 9, 2011, Officer Cherro assaulted Mr. Greene by yanking his handcuffs down and kicking him in his legs without any basis for doing so. (ECF No. 20 ¶¶ 124-33.)

The Court recommends dismissing all individual capacity claims based on these allegations. Mr. Greene chose not to name Officer Cherro as a defendant, so these claims do not establish liability against Officer Cherro. And under section 1983, an official cannot be vicariously liable for the acts of his subordinates, *see e.g., Semler v. Ludeman*, 09-cv-0732-ADM-SRN, 2010 WL 145275, at *7 (D. Minn. Jan. 8, 2010). Rather, defendants are liable for their own personal acts only. *Id.* Mr. Greene does not allege Defendants Carlson and Moser personally participated in the alleged misconduct, and although Mr. Greene alleges Defendants Carlson and Moser failed to properly "train" Mr. Cherro, this allegation is a conclusory legal statement unsupported by any factual assertion regarding the manner in which Mr. Cherro's training was allegedly deficient or any duty Defendants Carlson or Moser may have had to provide it. The Court need not accept such conclusory allegations as true. *See Hanten*, 183 F.3d at 805; *see also Semler*, 2010 WL 145275 at *7 ("A plaintiff must show an affirmative link between the misconduct and the adoption of any plan or policy by the defendant showing the authorization or approval of such conduct."); *Daywitt v. Minnesota*, 14-cv-4526-MJD-LIB, 2015 WL 4094199, *11 (D. Minn. July 6, 2015) (rejecting MSOP failure-to-train claim based on plaintiff's failure to allege specific facts regarding

15

training practices that were so obviously deficient as to reflect a deliberate indifference to the plaintiff's constitutional rights). Because the Amended Complaint does not allege facts creating a plausible inference that Defendants Carlson or Moser are personally liable for Officer Cherro's alleged misconduct, the Court recommends these claims be dismissed under Rule 12(b)(6).

The Court further recommends dismissing any official capacity claims for monetary damages predicated on these allegations. The Eleventh Amendment precludes an award of monetary damages against state officials acting in their official capacities unless the State has unequivocally waived its immunity. *See, e.g., Semler*, 09-cv-0732, at *7. The State of Minnesota has not waived its immunity in this case. Thus, to the extent Mr. Greene seeks monetary relief against Defendants in their official capacities based on these allegations, his claims must be dismissed.

A plaintiff may maintain claims for prospective declaratory and injunctive relief under section 1983, however. *See id.; Ex Parte Young*, 209 U.S. 123, 159-60 (1908). The Amended Complaint asserts claims for declaratory and injunctive relief. (ECF No. 20 at 89-91.) The Court nonetheless recommends dismissal of any such claim for two reasons.

First, the extent to which Mr. Greene's demands for declaratory and injunctive relief are predicated on the above-cited factual allegations concerning Officer Cherro is unclear because of the shotgun approach he used in pleading his complaint. (*See id.* at 90-91, seeking "[a]ll appropriate preliminary and permanent injunctions requiring defendants … to provide all constitutional rights to which Mr. Greene is entitled" and "[a] preliminary and permanent injunction to stop … the unlawful denial of treatment, deliberate indifference to his serious medical needs, unsafe conditions, sexual, racial discrimination and retaliation that violates plaintiff's rights ….") These demands do not provide Defendants with sufficient notice of the injunctive relief he

16

is seeking or whether they are linked to any allegations unresolved by *Karsjens*. *See Gurman*, 842 F. Supp. 2d at 1153 (claims must be sufficiently clear and concise to allow defendants to readily respond to them).

Second, any claims he asserts for prospective relief based on the allegations concerning Officer Cherro fail because they are not grounded in a continuing case or controversy sufficient to confer standing to seek prospective equitable relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (holding that "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy" sufficient to establish a claim for equitable relief). Mr. Greene alleges three incidents involving Officer Cherro that each took place more than a decade ago. Though he asserted at the time of filing his Amended Complaint in 2011 that he lived "under constant fear of reprisal" because he attempted to file a criminal complaint against Officer Cherro (ECF No. 20 ¶ 129), he has not asserted in response to Defendants' Motion to Dismiss—or at any point since the stay was lifted—that the alleged violations or his fear of reprisal from Officer Cherro are continuing. Nor has Mr. Greene asserted that the alleged misconduct arose from any official, continuing MSOP policy. Based on this record, the possibility of future harms to Mr. Greene arising in connection with the novel factual allegations concerning Officer Cherro is speculative at best, and the Court cannot find that these allegations establish a likelihood of future injury sufficient to provide grounds for equitable relief.

Finally, Defendants note that Mr. Greene has not responded to their multiple arguments for dismissing any claims not precluded by *Karsjens* on grounds that such claims fail as a matter of law. (ECF No. 132 at 3-4.) Upon reviewing Mr. Greene's memorandum in opposition to Defendants' motion (ECF No. 128) and his additional response memorandum (ECF No. 135), the Court agrees that the sole focus of Mr. Greene's argument is on relitigating *Karsjens* and his

contention that claim preclusion should not apply. For this reason, any argument in opposition to Defendants' dismissal motion on the ground that his claims are not legally cognizable appears to be waived. *See, e.g., Hewitt v. City of Minneapolis*, Civ. No. 12-2132 (DWF/FLN), 2013 WL 718189 at *5, n.6 (D. Minn. Feb. 27, 2013). Because all of Mr. Greene's claims are either precluded by *Karsjens*, or are legally deficient and otherwise waived, the Court recommends that this action be dismissed with prejudice.[6]

### III.   Mr. Greene's Motion to Consolidate

Mr. Greene seeks to consolidate this action with *Brown v. Ludeman et al.*, 11-cv-2859-JRT-ECW; *Jamison v. Ludeman et al.*, 11-cv-2136-PAM-DTS; *Allan v. Jesson et al.*, 11-cv-1611-ADM-LIB; *Scott v. Dayton et al.*, 11-cv-3714-NEB-DJF; *Hartleib v. Dayton et al.*, 12-cv-344; and *White v. Dayton et al.*, 11-cv-3702 (ECF No. 126). Because the Court recommends dismissing the entirety of this action with prejudice, it recommends denying this motion as moot.[7]

### IV.   Mr. Greene's Motion for Sanctions

Mr. Greene seeks sanctions against defense counsel based on Defendants' argument that *Karsjens* precludes Mr. Greene's lawsuit (*see* ECF No. 141). In Mr. Greene's view, because *Karsjens* applied an incorrect legal standard—and defense counsel purportedly knows it was incorrect—the Court should sanction defense counsel's alleged deceit.[8] (*Id.*) As previously discussed herein, however, even if Mr. Greene is correct that *Karsjens*' counsel should have raised

---

[6] Because the Court recommends Mr. Greene's federal claims be dismissed in their entirety, it further recommends that the exercise of supplemental jurisdiction over Mr. Greene's state law claims be denied, to the extent any such claims might otherwise survive.

[7] Mr. Greene's Motion to Consolidate is also largely moot because several of the cases he seeks to consolidate this matter with have already been dismissed.

[8] Mr. Greene also seeks sanctions for alleged violations of the Minnesota Rules of Civil Procedure, which do not apply to this federal lawsuit.

18

different legal arguments, and even in the unlikely event that defense counsel finds Mr. Greene's alternative theory meritorious, these facts would have no bearing on whether *Karsjens* and the doctrine of claim preclusion foreclose Mr. Greene's claims. Accordingly, the Court denies Mr. Greene's Motion for Sanctions.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Mr. Greene's Motion for Sanctions (ECF No. [141]) is **DENIED**; and

2. Mr. Greene's Motion to Appoint Counsel (ECF No. [144]) is **DENIED**.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendant's Motion to Dismiss (ECF No. [120]) be **GRANTED**;

2. Mr. Greene's Amended Complaint (ECF No. [20]) be **DISMISSED WITH PREJUDICE**; and

3. Mr. Greene's Motion to Consolidate (ECF No. [126]) be **DENIED AS MOOT**.

Dated: June 5, 2023                    *s/ Dulce J. Foster*
                                       Dulce J. Foster
                                       United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).